1809.

Reinicker
vs
Smith

REINICKER vs. SMITH.

SMITH vs. REINICKER.

JUNE

T F. and B F, being seized as tenants in common under the act to direct descents, with S S, of and in (among others,) a lot of ground, contracted separately with G R, and agreed to convey to him all their interest therein, on the payment to each of them of $300; and the money being paid, possession of the lot was delivered to G R, who after the death of T and B F, filed a bill in chancery against S S, she being their heir, for a specific performance of the contract. S S, by her answer, alledged that both T & B F were in habits of intemperance, and were almost constantly in a state of intoxication. That the lot was contracted to be sold by them when in a state of intoxication, or when they were incapable of transacting business, at a price greatly below its value, &c.—*Decreed,* that S convey to G R, one undivided third part of the lot of ground; but as to the contract of B F, on account of the satisfactory proof of his imbecility, it ought not to be enforced; and that G R deliver to, or permit S S to take or enjoy two undivided third parts of the lot of ground, without her refunding the consideration paid by him to B F. A tenant in common, under the act to direct descents, may dispose of his interest in any particular portion of the estate so held in common.

CROSS APPEALS from a decree of the Court of Chancery. The complainant, *(Reinicker,)* filed his bill of complaint against the defendant, *(Smith,)* stating that *Thomas Franklin,* being seized of a lot of ground in *Baltimore,* agreed to sell all his interest therein to the complainant for the consideration of £112 10 0, which agreement was reduced to writing, and is evidenced, by the bond of conveyance exhibited, dated the 20th of March 1794. That the consideration money has been fully paid. The bill further stated, that *Benjamin Franklin,* brother of *Thomas,* afterwards claiming to be possessed of an interest in the premises, agreed to transfer and convey the same, absolutely, to the complainant, for the consideration of $800, which agreement was reduced into writing, and is evidenced by the bond of conveyance, exhibited, dated the 29th of July 1794. That the consideration money has been fully paid; and the complainant, ever since the execution of the two bonds of conveyance, has been in the quiet, secure, and unmolested enjoyment of the premises. That *Thomas* and *Benjamin Franklin* are both since dead, and that *Sarah Smith,* the defendant, is seized and possessed of the inheritance and legal estate in the premises, by right of descent, and as heiress at law. That the complainant has frequently applied to her for a deed of conveyance of the premises, which she has refused to execute, and has instituted actions of ejectment for the recovery of the possession of the premises. *Prayer* for a specific performance of the agreements, and a deed of conveyance of the premises, and for an *injunction,* &c. The *answer* of the defendant stated, that her brother, *James Franklin,* was in his lifetime seized and possessed, and died seized and possessed, amongst other real estate, of the lot of ground mentioned in the bill, on the 31st of December 1793, intestate, leaving a sister, (the defendant,) and two brothers, *Thomas* and *Benjamin,* before named, and which two brothers, and the defendant, on the death of *James,* became, under the act to direct

descents, entitled equally to all the real estate of which James died seized, subject to the provisions and regulations mentioned in that act. That both her said brothers were in the habits of drinking strong liquor to great excess; and from the time of the death of their brother James, being freed from all restraint, and having entirely in their power the means of gratification, and being, it is believed, encouraged in their excesses by persons who wished to obtain advantages over them, they were almost constantly in a state of intoxication; and that when not actually drunk, they were scarce ever, if ever, free from the effects of the excesses to which they were addicted, and the mental imbecility arising therefrom. That their extreme fondness for strong liquor, and their anxiety to obtain it, also rendered them open to imposition from any person who would furnish them with money by which they could procure their gratification, however exorbitant the terms; and whatever contract they, or either of them, might have entered into for the sale of lands, it is believed, originated either from their being in a state of intoxication at the time, or from the solicitude of acquiring money for their excesses, as they had no occasion to dispose of any of their real estate to supply any necessary want. That both her brothers died within eight months after the death of their brother James, and within eleven days of each other, having fallen victims to their constant intoxication. That Benjamin died on the 10th, and Thomas on the 20th of August, 1794. That the lot of ground mentioned in the bill, is situate in a very valuable and improving part of Baltimore town, and contains an acre of ground, and is believed, by the best judges, to be worth upwards of £2000. That Reinicker pretends to have the bonds of conveyance set forth, but they are not admitted to have been executed by her brothers, or either of them, or that they received the alleged consideration; but if the bonds were executed, she has no doubt but they were executed by her brothers when in a state of intoxication, or when they were incapable of transacting business, and that advantage was also taken of their ignorance of the value of the property; for the money alleged to have been paid for the property is not equal to the sixth part of the value of the lot. She admits that she has refused to convey the lot to Reinicker, because she was and is of opi-

1809.

Reinicker
vs
Smith

tion, that she is not bound in law or equity to convey the same. That she is willing, and has offered to pay to him any sum of money which her brother *Thomas* hath actually received from him.

*Testimony* was taken and returned under a commission which issued, and the case was argued before, and submitted to, the chancellor.

HANSON, Chancellor. The complainant applies for the performance of a contract made by a brother of the defendant, who has refused on the ground of the complainant's having taken advantage of a man whom habitual intoxication had rendered unfit to manage his own affairs, and an easy prey to an artful designing man.

The chancellor conceives that the privileges of drunkenness are pretty well ascertained, and that they ought not to be extended. Has it ever been settled or understood, that because a man is addicted to strong drink, no contract which he makes shall be binding, unless he, or those who come after him, shall think it eligible to abide by the bargain? If this were the case, a drunkard would have advantages far superior to those which are enjoyed by the most prudent, shrewd, sagacious man. For instance, seven years ago he sold land for £5 an acre, which in the opinion of witnesses was at that time worth £7. It is now worth £20. He has not conveyed it. Being sued in chancery, he says "it is well known that I was every day drunk, and therefore the contract ought not to stand." The chancellor, as he has already said, considers the privilege to be well ascertained, and sufficiently extensive. If a man evidently has procured another to be intoxicated, in order that he might obtain an unconscionable bargain of him, and has obtained it, this court will not, on application, hesitate to vacate the contract. But if a man, accustomed to strong drink, and even to be intoxicated every day, but notwithstanding possessed of reason, and the power of reflection, determines, with all the deliberation he is capable of, to sell his property, offers it repeatedly for sale, at length sells it at the best price he can obtain, to a man, against whom there is not proof of his having taken advantage of the hour of intoxication; if afterwards he professes himself satisfied with the bargain, and assigns a good reason for it— when the bargain is clear, explicit and certain—when it

1809.

Reinicker
vs
Smith

has been fully executed on the other side—the chancellor cannot think, that under such circumstances this court ought not to enforce it. He has described the case before him with respect to *Thomas Franklin*, as appears to him from the proceedings. *Decreed*, that the defendant, by a good deed, to be acknowledged and recorded according to law, give, &c. to the complainant, and his heirs, one undivided third part of the lot or ground mentioned in the bill, and the bonds from *Thomas* and *Benjamin Franklin*, deceased, to the complainant.

As to the contract of *Benjamin Franklin*, the chancellor is of opinion, that on account of the satisfactory proof of his imbecility, it ought not to be enforced by this court; but that the money to him paid by the complainant ought to be restored. *Decreed* also, that the defendant pay to the complainant the sum of $300, which was, it appears, paid by the complainant to *Benjamin Franklin*, deceased; and that upon her executing and acknowledging the deed hereby directed, and paying to the complainant, or bringing into this court, to be paid to him, the sum of $300, the injunction in this cause issued be dissolved; and that the complainant be enjoined to, and shall deliver to her, or permit her to take or enjoy, two undivided third parts of the lot or ground before mentioned. From this decree both the complainant and defendant appealed to this court.

The cause was argued before CHASE, Ch. J. POLK, BUCHANAN, NICHOLSON, and EARLE, J. by

*Key* and *T. Buchanan,* for *Reinicker;* and by *Martin* and *Harper*, for *Smith.*

The counsel for *Smith* contended, that the contracts ought not to be decreed to be specifically performed, because of *drunkenness*, and the *inadequacy of price.* As to the first, they cited 2 *Pow. on Cont.* 226, 227. *Osmond vs. Fitzroy*, 3 *P. Wms.* 131, (note A.) *Cory vs. Cory*, 1 *Ves.* 19. 1 *Fonbl.* 68. And as to the latter, they cited 2 *Pow. on Cont.* 78, 153, 158, 221, 224, 225, 227. *Chesterfield vs. Janssen*, 2 *Ves.* 155. *Pope vs. Roots*, 7 *Bro. Parl. Ca.* 184. *Clarkson vs. Hanway*, 2 *P. Wms.* 203. *Cole vs. Gibbons*, 3 *P. Wms.* 293. *Baldwin vs. Rochford*, 1 *Wils.* 229. *Attorney General vs. Syderfin*, 1 *Vernon*, 224. *Green vs. Wood*, 2 *Vernon*, 632, and *Phil-*

1809

Reinicker
vs
Smith

*tips vs. Buck,* 1 *Vernon,* 227. They also contended, that a tenant in common could not convey less than his *whole interest* in the *whole estate* which descends to him under the act t*>* direct descents, (1786, *ch.* 45,) as under that act the whole estate is to be divided; and if the interest of a tenant in common, in a particular lot of ground of that estate, has been sold by him, the division could not be made; for it might be that where there were several lots, upon the division and allotment, the particular lot which had been so sold might be assigned to some other of the heirs.

The counsel for *Reinicker* cited 2 *Pow. on Cont.* 152 to 159, 144 to 145, 220, 228. 1 *Pow. on Cont.* 30. *Sugdon* 167. They also argued, that it could not be said that a tenant, holding, in common with others, property in different parts of the state, could not sell his interest in any one of the parcels lying in any particular place. That he might sell his whole interest in the estate, or his interest in a part only. That he might convey his interest in a particular designated property; and if he could convey, he could contract. He could not designate a particular part of the lot or tract of land, but he might sell his interest in any particular part. There could be no difficulty under the act to direct descents, where a partition or sale of the estate was directed. The purchaser could be admitted to participate, and might be placed in the situation of the tenant who sold to him. That if a judgment was rendered against a tenant in common, it would not be contended that a *fieri facias* could not be laid upon his interest in a particular part of the estate, and that interest sold.

The Court *affirmed* that part of the decree of the court of chancery from which *Reinicker* appealed, with costs. And on the appeal by Mrs. *Smith,* the court *reversed* that part of the decree which decreed that she should pay to *Reinicker* $300, without costs in either the court of chancery or this court; and they decreed, that on her executing the deed directed, the injunction should be dissolved, and that *Reinicker* be enjoined to, and should deliver to her, or permit her to take or enjoy, two undivided third parts of the lot of ground mentioned in the proceedings.

DECREE REVERSED IN PART.