## Milton H. Butler v. James A. Roys and others; and Same v. Grover S. Wormer and others.

*Tenants in common: Conveyance of undivided interest in single parcel: Sale on execution.* Where an inheritance consists of several distinct freeholds, a tenant in common may convey his undivided interest in any one or more of them, and it may be sold on execution, without reference to any of the other parcels.

*Each platted city lot presumed to be a separate holding.* Where such an inheritance consists of separate city lots which have been platted, each lot is presumed, in the absence of any showing to the contrary, to be a separate holding.

*Effect of voluntary partition upon execution purchasers.* Where the interest of one of several heirs in certain city lots, constituting a portion of an inheritance, has been sold on execution, the fact that, upon a voluntary partition among the heirs, to which the execution purchasers were not made parties, said city lots were set off to others of the heirs than him whose interest has been so sold, cannot prejudice the rights of such purchasers.

*Heard April 11. Decided April 30.*

Error to Wayne Circuit.

Joseph Campau died seized of a large number of parcels of land of different values, in Wayne county and elsewhere, leaving nine children as equal heirs. The interest of one of these heirs, Theodore J. Campau, in each of

four separate city lots in Detroit, was sold on execution, levied upon such interest in said lots alone, which were only a portion of the lands in said county belonging to such inheritance. The interest in each lot was sold separately. On a partition among the heirs, to which the execution purchasers were not made parties, these lots were set off to Daniel J. Campau and Denis J. Campau, two of the other heirs of said Joseph Campau. The plaintiff, as grantee of the execution purchasers, brought ejectment against such heirs and their tenants, Roys and Wormer, for an undivided one-ninth interest in these lots. The judgment of the circuit court was in favor of the defendants, and the plaintiff brought error.

*John J. Speed, E. W. Meddaugh, G. V. N. Lothrop,* and *R. P. Toms,* for plaintiffs in error.

*S. Larned, D. B. & H. M. Duffield, Henry M. Cheever,* and *C. I. Walker,* for defendants in error.

CAMPBELL, J.

The material facts for the decision of this cause are, that Joseph Campau having died seized of a large number of parcels of land of different values, in Wayne county and elsewhere, and having left nine children as equal heirs, the interest of one of them, Theodore J. Campau, was sold on execution, not levied on such interest in all the lands in Wayne county, but on four separate city lots in Detroit, and the interest in each lot was sold separately. On a partition among the heirs, to which the purchasers were not made parties, these lots were set off to other heirs, and not to Theodore. The execution purchasers bring ejectment for their undivided interests in these lots, the present cause being on the same footing with the others, which are to

abide this decision. The suit is defended on the ground that the execution sales were invalid, because covering parts and not all of the estate in common. ·

The question presented here was urged, but not decided, in certain suits in equity brought to set aside the execution sales.—*Campau v. Godfrey, 18 Mich. R., 27.* It now becomes necessary to decide it, as disposing of the substantial rights of all parties concerned.

There are more *dicta* than decisions upon the precise point in litigation here, and we have rarely found a matter of so much importance on which so much has been carelessly said, and so much inferred without adequate authority. It is nevertheless important to have the rights of parties settled finally, and we have done what we could, with the aid of counsel, to satisfy our own minds on the subject. And upon the exact dispute involved here, we have, at least so far as our own views are concerned, got rid of the very serious doubts which seemed at first to involve the doctrines of the law in great confusion.

The principal controversy is not whether a tenant in common can convey his interest by metes and bounds in a part of an estate, but whether all of the various tenements held in common in a state, county, or other municipal territory, are to be regarded as one estate in common, for all purposes of conveyance and partition. And this is the only question which we are required to pass upon in this controversy.

The lots in question in these actions of ejectment, all belong to the Governor and Judges' plat of the city of Detroit, and are separate freeholds. No one of them appears to have been so combined with any other as to make them one indivisible holding by separate occupancy, by lease for a single and unapportioned rent, by subjection to a single

charge, or in any other way. And there is nothing to show that the possession of any one of them is necessary to the enjoyment of any other. The case is, therefore, presented very simply, and involves no peculiar complications.

The ground on which it is claimed no tenant in common can pass an undivided interest in any less than the whole estate, is that, by doing so, he prevents his co-tenants from any chance of obtaining the whole of the lesser tract in severalty, as they might otherwise do, in case a partition should be had. In other words he limits their chances of getting entire lots to a smaller number of parcels, and may make it necessary for them to get a number of little tracts, instead of one or more larger ones.

This is a tangible grievance, and may become a very serious one. The only question for us to consider is, whether it is an interference with any legal right.

It will be found that the decisions holding or favoring this doctrine are all American, and all rely for authority upon the leading cases in Massachusetts. The few English decisions on which these latter rely (*Tooker's case, 2 Co., 68, and Cro. Eliz., 803,* being the principal ones), are not decisions upon this subject, but only hold that joint tenants and tenants in common can do nothing to lawfully prejudice the estates of their co-tenants. They do not any of them hold, so far as we have been able to discover, that where there are several distinct freeholds, or estates, a disposal of an undivided interest in one of them would work a legal prejudice. And it is only unlawful acts which can do this. The whole ruling, therefore, is an assumption, unless founded on more specific authority, and must depend on controlling reasons, or must be considered as open to question. It will be seen, by a close inspection, that while

the point involved in the case before us has been spoken of with some positiveness, there has been very little occasion to decide it.

*Porter v. Hill, 9 Mass. R., 34,* is the leading case. There a single large tract of land had been sold to joint tenants, who mortgaged it back for the purchase money. The smaller parcels in which undivided interests were transferred were carved out of this estate, and the entire estate became vested in the grantor of the defendant. The case was decided without either citation of authorities or reasoning, the whole doctrine being laid down in these two sentences: "And one joint tenant cannot convey a part of the land, by metes and bounds, to a stranger. If he could, his grantee would become tenant in common of a particular part with the other joint tenant, who, in making a legal partition, might, notwithstanding, have the whole of the part thus conveyed, assigned as his property." This brief assertion, in a case where there was but one estate, and where it was a correct rule, has been made the starting point for all the decisions in the country, so far as they have been traced out, leading to a broader doctrine.

The next case was *Bartlet v. Harlow, 12 Mass. R., 348,* where there had been a levy by extent upon an interest in twenty acres out of a single tract of sixty acres. In this case, while it is said there is an absence of common-law authority to sustain such a transfer, and while an explanation is made of certain remarks of Lord Coke, as not fairly bearing such a construction as would favor it, the only unequivocal authority cited, is one from *Brownlow,* which very distinctly holds that where there are several estates there may be separate sales. *Porter v. Hill* is affirmed, and its reasoning somewhat expanded, and it is intimated finally, that the transfer might become operative, if, on partition, the land it covered fell to the defendant in execution. That

25 MICH.—8.

case, then, is not in point beyond the force of its reasoning, if referring to different freeholds. It was not at all like this case, because a single estate was involved and no more.

*Varnum v. Abbot, 12 Mass., 474,* was a case where it does not appear there was more than one estate, though there were several conveyances of undivided interests, by the several tenants in common, in separate portions of it. No question was decided in that case beyond the validity of the conveyances as against the grantors, which was maintained. It was held, however, that separate actions were necessary against the disseisors of the various parts under those conveyances,—a doctrine which is certainly sound, but which puts the co-tenants to the very trouble the main doctrine in the former cases was apparently designed to prevent.

In *Baldwin v. Whiting, 13 Mass. R., 57,* the premises consisted of one tract, and the case was decided on the previous authorities. The same is true of *Blossom v. Brightman, 21 Pick. R., 283, 285.* In *Nichols v. Smith, 22 Pick. R., 316,* there was no decision on the question at all, the deed being held good against the parties to the suit.

*Peabody v. Minot, 24 Pick. R., 329,* is the first case involving different parcels, and no question was raised or discussed in the argument concerning any difference between the transfer of interest in one of several estates and in parts of a single estate. But in this case the court held, practically, that an interest in one of two distinct estates could be sold. The inheritance consisted of two parcels in Methuen, and four in Bradford, the latter being parts of one farm. It does not appear whether the lands in the two towns had been used together or not. The lands in Methuen, and three of the small parcels in Bradford, were assigned for dower. The court held the dower lands should be considered as a separate estate, and might be

dealt with by themselves, without reference to the rest, which were not subject to dower; but held also that a transfer of an undivided interest in a specific portion of the dower lands was bad.

That decision, which is the only Massachusetts case we have found directly in point, seems opposed to the doctrine that undivided interests in distinct freeholds cannot be sold separately. In *Miller v. Miller, 13 Pick. R., 237,* the decision seems to rest on the same grounds. There a tenant in common asked partition of a mill-dam and its appurtenances, and it was refused on the sole ground that it was part of a single freehold. The court say: "We decide the case on the ground that the mill, dam, logways, water privilege, and appurtenances, constitute one entire tenement or holding of a freehold estate, and therefore the petition, being for partition of the dam and water alone, cannot be sustained. It is a well settled rule of law, that a tenant in common cannot enforce partition of a part of the common tenement by metes and bounds." And they said separating mill and dam would destroy the estate.

*Adam v. The Briggs Iron Co., 7 Cush. R., 361,* held that the minerals and the soil could not be dealt with separately by a tenant in common, a question similarly decided in New Jersey, in *Boston Franklinite Co. v. Condit, 4 Green, Eq., 374.* In *Ex parte Bonner, 4 Mass. R., 122,* it was held, at a very early day, that two parcels in different counties could not be partitioned together, because not in one venue. Yet such parcels might be joined in one border farm.

The decisions referred to, however broad their intimations may be, do not operate as binding precedents for any doctrine applicable to cases where there are distinct freeholds. And, as they do not profess to rest on either

English or American precedents, going to any such extent, they cannot absolve us from the necessity of considering the questions on common-law principles.

A somewhat careful investigation of cases cited, and some not cited, in Maine, New Hampshire, Vermont, Connecticut, New Jersey, Maryland, Tennessee, and Virginia, while it shows that the Massachusetts decisions underlie them all, and in many instances are asserted as maintaining the broadest doctrines, shows further, that in not more than five or six cases reported from all those states, so far as we can gather, was any question really in issue beyond rights in single tenures. And, except from the cases cited, they get no real support from any adjudications. They all rest on the theory of prejudice to the rights of co-tenants, and they generally allow the deeds to operate by estoppel.

In Ohio, however, the rights of tenants in common are left almost unlimited, since the case of *White v. Sayre, 2 Hammond, R., 110.* And in some other states the distinction is recognized expressly, between single and detached freeholds.

In *Starr v. Leavitt, 2 Conn., 243,* it was held improper to levy an extent on an undivided interest in two parcels, when an undivided interest in one would have satisfied the claim. The Massachusetts doctrine in regard to subdividing single parcels was nevertheless recognized, and has always been followed.

So in Maryland, in *Carroll v. Norwood, 1 H. & J., 167,* it was held that a single tract could not be cut up under a sale of undivided interests in parcels of it, but if the parties had themselves platted it into parcels, an interest might then be sold in any one of them. The same rule is recognized in *Reinicker v. Smith, 2 H. & J., 421.*

So in Missouri, in *Primm v. Walker, 38 Mo., 94,* it was held that platting lots for sale made separate estates of them, and interests in each might be conveyed.

In a majority of the states no discussion has arisen upon this particular question. From a review of the cases cited on the argument, or which have come to our notice, the distinction is, we think, maintained on the real weight of authority, confining this term to actual decisions and not *dicta.*

But inasmuch as it cannot be denied, there has been a vague idea, in many quarters, that there was something especially improper in disposing of undivided rights in parts of an inheritance, it will be of some importance, perhaps, to consider how far this notion has any legal foundations. And as the only expressed reason for the judicial statements referred to, is the prejudice done to the co-tenants, this must be taken into account in the outset. And we are required to consider what is to be regarded as such a prejudice as will preclude the dispositions referred to.

It cannot be true that every act which has a tendency to interfere with the supposed interests of others is forbidden, merely because some such tendency may be imagined to exist. No rights of property can depend on the floating and unregulated opinions of courts or juries. No legal right can be cut off on any such pretence. Unless the law of the land has made an interest in land unassignable, no court, either of law or of equity, has any power to forbid it. Courts of equity cannot override the law any more than other courts. Every court must respect the rights lawfully obtained by transfer from tenants in common. And the original resort to equity is declared and settled in England to be a matter of absolute right, in every case where partition could be had at law, and in no other case,

except as to equitable estates.    It is the legal right which gives jurisdiction over the legal estate.—*Baring v. Nash, 1 V. & B., 551; Parker v. Gerard, Ambl., 236; Turner v. Morgan, 8 Ves., 143.*

It is held, also, that the right is so absolute that, although its enforcement would lead to the most absurd, oppressive, and ruinous results, the court was powerless to resist it. Equity had no inherent jurisdiction to order sales, and where the number of interests was large, or the parcel to be divided small, or difficult of division, the division must be made in spite of the difficulty or hardship.    Equity can, no doubt, do justice as to many collateral rights and incidents, which could not be regulated under the writ of partition, and can deal with numerous interests and estates; but the jurisdiction, as before stated, is one which cannot be refused to any legal owner.    And by the former English practice, the action of the commissioners could, not be over-ruled by the court for inequality.—*Manners v. Charlesworth, 1 Myl. & K., 330.    Turner v. Morgan, 8 Ves., 143*, is an illustration of this.    Partition was there sought of a house, complainant owning two-thirds, and defendant, who was in possession, owning one-third.    The Chancellor, seeing that a division would be ruinous, held the case over for some time that the parties might come to an agreement.    But this failing; it was said that the rule was compulsory, and he reluctantly granted a decree.    The result appears in a note to *11 Ves., 157*, which is as follows:  " The end of that case was, that, the commission having been executed, an exception was taken by the defendant, on the ground that the commissioners had allotted to the plaintiff the whole stack of chimneys, etc., all the fire-places, the only stair-case in the house, and all the conveniences in the yard. Upon the first of August, 1804, the exception was overruled.

The Lord Chancellor said he did not know how to make a better partition for the parties; that he granted the commission with great reluctance, but was bound by authority; and it must be a strong case to induce the court to interpose; as the parties ought to agree to buy and sell." In *Parker v. Gerard, Ambl., 236,* where the interest of a party was so small he would have preferred relinquishing it, he was compelled to make partition, and, according to the rule then in force, to pay an equal share of the expense. There are some further cases collected in the notes to *Agar v. Fairfax, 2 Lead. Ca., in Eq., 349 et seq.,* and in the notes to *Mundy v. Mundy, 1 Belt's Supp., 236–7.*

The difficulties which have occurred in practice, have been very serious, and the mischief done by unlimited transfers and subdivisions of undivided interests has been quite as prejudicial as any dealing with interests in detached lots could be. The remedy hinted at by Lord Eldon, and by other chancellors, was resort to a sale. Our law has always permitted this when property was not divisible without mischief; and we have never had any such monstrous results as appeared in *Turner v. Morgan.* We are not informed whether this power existed when the law was settled in Massachusetts. It completely removes all the imaginary hardships there suggested. It may be said, indeed, that the tenants would prefer lands, and have a right to them. But this principle must be general, and apply as well to small as to large estates; and then the power to insist on a division is, as plainly stated by Lord Macclesfield, in *Earl of Clarendon & Bligh v. Hornby, 1 P. Wms., 447,* a power to extort an exorbitant price from the party desiring the estate. The statute does not permit any such grasping and selfish policy, and, as all parties can bid, if they choose, they can always get the worth of the

land, if not the land itself.     The prejudice is now, at least, very difficult to be appreciated.

In England the result of their old experience has been the passage, in 1868, of an act not only permitting a sale, in any case where it seems necessary, but absolutely requiring it in all cases where one-half in interest request it, unless the opposing parties will buy.     And it has been allowed on behalf of infants and married women, as well as others.—*Higgs v. Dorkis, L. R., 13 Eq., 280; France v. France, Id., 173.*     In *Pemberton v. Barnes, L. R., 6 Chancery Appeals, 685,* decided in July, 1871, the Lord Chancellor applied this statute to a very great estate, including a first-class mansion and park of three hundred acres, farming lands of three thousand acres, and a manor extending over about thirty square miles.     He makes some very sensible remarks upon the sentimental view of the question which seems to have been taken by the Vice Chancellor, which are not inapplicable to such cases as this.     "The Vice Chancellor then urges, as a reason against a sale, that the two part-owners come from a common ancestor, and that the testator gave the estate to them as land.     No doubt he gave it as land; but he gave it to them absolutely, and there was nothing to prevent them from disposing of it as they thought fit.     Consequently, I do not see that its coming from a common ancestor makes any great difference."—*p. 694.*     We must look, then, to ascertain whether there is any such legal incapacity as is asserted, for in this, equity only follows the law.

It would be of more antiquarian than practical interest to discuss at large the old English doctrines in regard to partitions and undivided estates.     The decisions are consistent in denying any right to divide such estates, large or small as involve single, rents, services, or other elements of

difficulty.    Copy-holds and customary estates cannot be partitioned at all, even by courts, except possibly, under the recent statutes of Victoria.—*Allnatt on Partition, 136.* And there are many cases where nothing but the wide discretion of equity can enable a division to be made without great inconvenience.

But upon the question whether estates can be dealt with by parties separately, there is, we think, no absence of authority.    The doctrine is not unknown.

In all the cases which have arisen, so far as we have been able to trace any thing on the subject, the dispute has been, not whether estates could be partitioned separately, but whether they must not always be partitioned so.    And Judge Story, in his chapter on partition, *1 Eq. Jur.*, § *646, et seq.*, shows it to be one of the chief advantages of equity over law, that it is not compelled to subdivide each parcel. At common law there could be no allowance made for owelty or equality of partition, except by agreement of the parties, and every parcel must be subdivided into as many payments as there were owners, unless they all happened to be of equal value, which could seldom happen.    While no case has been discovered, in any of the English law books, in any way questioning the right to deal separately with separate freeholds, the variations from that practice are recorded usually with their reasons, and as deviations from custom.    The doctrine that, on a partition of different estates, they may be allotted severally and without subdivisions, is traced back to an authority cited in *Brooke's Abridgment,* from the Year Books.    The statutes of Henry VIII., which gave to tenants in common and joint tenants the rights of partition, merely extended to them the common-law writ *de partitione facienda,* as it had always been given to coparceners, and made no change in its operation.

25 MICH.—9.

The language (merely modernized in spelling) is, "in like manner and form, as coparceners by the common laws of this realm have been and are compellable to do, and the same writ to be pursued at the common law."—*Act 31, H. VIII., c. 1.* The authority in *Brooke* was a case of *quare impedit* concerning the presentment of an advowson. A widow having dower in several tenements and manors, the sheriff, under a writ, assigned to her in entirety one manor and advowson. It was claimed she should have been endowed of a third of each, but two of the judges held against one, that the assignment was good. *Littleton* enlarged somewhat upon the matter, and gave illustrations.

He says: "If a man has two manors, and elegit is sued against him, the sheriff may deliver him one manor; and likewise in writ *de partitione facienda*, where there are two parceners and two manors, the sheriff may assign the one to one, and the other manor to the other; and likewise in dower of three acres, or three manors, he may assign one acre, or one manor to the wife, for the whole."— *Br. Abr.* "*Dower 72*" (*12 Ed. IV.*). This same citation occurs in two other places, once under "*Elegit 14,*" and once under, "*Partition 29,*" in both of which it is qualified by the condition that the manors shall be of equal values (*Tamen videtur quod hoc intelligitur ou ils sont de equal values, et eadem de ii acres*). This qualification is recognized throughout (*Allnatt on Partition, 50; Viner's Ab., "Partition A., 4."*), and is necessary, because under the writ of partition there was no provision for equalizing shares. On voluntary partitions this was frequently done by a rent charge on the larger, in aid of the smaller, tenement assigned, or by occupying the several manors in alternate years.— *Fitz. N., B. 62 K.; Litt., §§ 251, 252; Co. Litt., 165 a.*

The writ was designed to compel refractory tenants into

a partition, and in a majority of cases the division was made without a writ, by such means as seemed proper. The commonest methods are mentioned by *Littleton*, §§ *243–4–5 et seq.*, and taken from him with explanations by most of the writers on real estate.— *Co. Litt., 166 a*; *2 Cr. Dig., 394–5.* This may account for the meagre information on the subject of enforced partition to be found in the books, complained of by the English as well as by the American courts. (See remarks of the Chancellor in *Manners v. Charlesworth, 1 Myl. & K., 330*). Much of the discussion in the early writers is upon the validity of these voluntary partitions, which were sustained as far as possible.

Equality of value alone was not enough to maintain an allotment to each of two tenants in common of a separate estate in entirety. They must have been held by similar titles. If one was held in fee simple, and one in fee-tail, there could be no such allottment, and each had to be subdivided, because a partition at common law did not bind future estates.— *Co. Litt., 173.*

The statutes relating to writs of elegit did not in terms require the sheriff to give an undivided half of the debtors lands, but simply a half in value, and, as usually interpreted, by metes and bounds. The practice seems generally, however, to have been to give only half of the several tenements extended, and the citation from *Brooke* refers to this. In *Den v. Lord Abingdon, Doug., 473*, the question was raised whether the sheriff might not deliver so many separate tenements, without division, as would equal in value one-half of all the lands of the debtor, and it was held he could do so,—Lord Mansfield remarking on the inconvenience of dividing a great number of parcels. It is said in a note, as well as in the argument, that there is some confusion as to what had been the construction of the statute. And it appears also that a division would be necessary, unless

the half in value could be got at without it.    But the
whole course of reasoning is against encumbering more par-
cels than should be necessary by such a levy, and would
apply to a levy on undivided estates as well as others.    We
find no English decisions directly touching such a case,
but the Connecticut case of *Starr v. Leavitt*, before cited,
is in point, and rests on the same principles.

The first case in equity which we have discovered, in
which a partition was sought without dividing each of the
estates, is *Earl of Clarendon & Bligh v. Hornby, 1 P. Wms.,
447*, where the defendant insisted very strenuously that the
common-law rule must be followed.    Lord Macclesfield,
however, held that it was in the power of the court to allot
entire parcels, and directed the commissioners to give the
mansion and principal estate to the complainants, only
assigning to Hornby lands to the full value of his one-third
interest.

In *Bartlett v. Harlow*, mention is made of an early case,
in *Brownlow, 157*, which it is admitted establishes the right
of a tenant in common to sell his interest in any freehold;
but it is intimated that he mentions no name nor date of
the case in question, nor any other particulars, from which
we might learn whether there was any thing peculiar in
the circumstances, or whether the point now in question
was considered by the court; and they proceed to say that
a single case, thus loosely reported, is entitled to very little
consideration, when it appears to be in any degree incon-
sistent with the general principles of the law applicable to
the subject.    As the only case cited in opposition, which
has any bearing on the subject, is *Porter v. Hill*, the criti-
cism is somewhat peculiar, and, so far as it relates to accu-
racy of statement, it is entirely unfounded.    The case is
stated very minutely, and the exact point decided is so plain
that no one could mistake it.    It is taken from *Viner's*

*Abridgment,* "*Partition S.*" *15,* and appears in that work as undisputed law; and it is so laid down in the modern work of Mr. Allnatt, who cites the case in three different places.—*Allnatt on Partition, 37, 60, 61.* The statement is as follows:

"Thirteen men joined in a purchase of a manor, the conveyance was of a moiety to one of them in fee, and the other moiety to the other twelve in fee. The twelve made a feoffment to J. S. of twelve several tenements and lands, and J. S. made twelve several feoffments to those twelve; now the thirteenth man, who had the other moiety, brought one writ of partition against them all, pretending that they held *insimul et pro indiviso;* and by the opinion of the whole court it would not lie, but he ought to have brought several writs."

It is not strange, perhaps, that the common-law rules should be unfamiliar, for even in England a question was raised but a few years ago, in *Hanbury v. Hussey, 5 L. & Eq., 81,* whether a manor could be divided at all.

In *Rutherford v. Jones, 14 Georgia R., 521,* a bill in equity was filed as the only supposed means of obtaining a partition without dividing every parcel held in common, and the court seem to have accepted the doctrine as true at common law, but said there was a statute passed at a very early day in that state, during the last century, which allowed entire lots to be set off at law; and on that account the bill was dismissed, and the party remanded to his writ. In Georgia the remedy in equity appears to have been confined to cases not cognizable at law.

So the House of Lords, in *Menzies v. Macdonald, 36 L. & Eq., 20,* dealt with a case where a land-holder, having a common interest in a lake bordering his estate, disposed of a part of his lands, and, as appurtenant thereto, of a part interest in the lake, to be used in common with the other

owners, who claimed no such partial interest in common could be conveyed. But on general principles, and without any suggestion of difference between English and Scottish law on the subject, it was held there could be no objection to it. The case is not directly in point, and is not authority, but its language is significant.

Judge Story, in his commentaries, lays down the doctrine that, while at law it is possible that in some cases whole estates may be allotted without division, yet " it is obvious that, at law, such a partition can rarely be conveniently made, because the court cannot decree compensation, so as to make up for any inequality, which must ordinarily occur in the allotment of different estates to each party."—*1 Story's Eq. Jur.*, § *657*. In the preceding section (§ *656 c.*) it is stated that " courts of equity, in making these adjustments, will not confine themselves to the mere legal rights of the original tenants in common, but will have regard to the legal and equitable rights of all other parties interested in the estate, which have been derived from any of the original tenants in common; and will, if necessary for this purpose, direct a distinct partition of each of the several portions of the estate, in which the derivative alienees have a distinct interest, in order to protect that interest." The case referred to as an illustration is *Story v. Johnson, 1 Y. & Col. Exch., 538, 2 Id., 586,* where one of three tenants in common holding each an undivided third interest in two estates, conveyed his interest in one estate to one grantee, and in the other estate to another grantee, and the court compelled both estates to be divided, each into three parts, so that each of those grantees should enjoy his title.

So in *Brace v. Foulkes, 13 L. & Eq., 297,* a tenant in common was allowed to file a claim for partition of a specific part of certain property, having no interest in the

remainder, although a bill was already pending for a partition of the whole, which had not yet been brought to a hearing; and the Vice Chancellor not only entertained it, but refused to compel the complainant to await the proceedings in the suit for the entire estate.

The courts, then, do not hesitate to recognize the right to make such sales.

Not only is our law regulating partitions based on the idea that a sale, instead of being a calamity to be avoided at all hazards, will always be more just than an unequal partition, but it must be construed with reference to other laws. Lands have no such fixed rental value here as in England, and when a creditor has claims, we require a sale instead of the ancient extent. If a creditor, no matter what may be the size of his debt, is compelled to levy on an undivided interest in a whole inheritance, he must in cases like the present, where the value amounts to millions of dollars, either make an excessive levy, or take an infinitesimal share in some hundreds of parcels. It is easy enough to see that property would not bring its value on such a sale, and that the procedure would not tend to simplify partitions, while it would almost inevitably lead to fraud and collusion against the purchaser, in settling the terms of partition, by decree or by agreement.

If lands have been treated as separate parcels for one purpose, there is no sense in holding them inseparable for another. The presumption must always be that lots which are purchased by separate deeds, or described in plats as separate, may be safely treated as continuing separate, unless so rented or occupied, or otherwise charged, as to render it improper thus to regard them. The law may do, safely and justly, what the parties do themselves, whatever may be the size of the freehold.

This has been the common practice of the country; and,

whatever may have been our undefined notions on the subject, they have seldom prevented lawyers or laymen from dealing with interests in city lots, or other distinct parcels, without inquiring whether they are held in common with other detached lands. Our tax-laws have always been framed on this plan, and the practice has not been found dangerous. But with the policy, whether good or bad, we have no concern, when parties rest on legal rights. We think the right of sale exists in each distinct freehold, and cannot be divested by legal discretion.

Cases are constantly arising where estates once separate become united into one holding, and when so united they may cease to be distinct freeholds. Where various adjacent lots are leased together for a rent, or subject to a burden, incapable of apportionment on any recognized basis for each lot, or where a hotel or other single building covers several lots, or where they are used together for a mill or factory, or other enterprise, or where various parcels are consolidated into one farm or made subservient to it, and so used, there can be no difficulty in determining by the terms of the charge, or by the possession itself, their unity of occupation; and a purchaser with that notice buys at his peril. Such cases are easily recognized, and will be readily dealt with on their own facts and merits. If an estate is really single, it will be protected against any acts in prejudice of the owners. And, on the same principle, as held in the case from Missouri, if parties subdivide an entire estate into distinct and separate parcels, with the plain design of treating them as separate, it can make no difference that the separate holdings were once united, or that the divisions are not extensive.

The execution purchasers of the interests of Theodore Campau took valid legal estates, and have a right to enforce them at law, as well as in equity. They are not bound

by the partition proceedings, because they were not made parties. If Theodore Campau, by the disregard of these sales, received on the partition a larger share than he was entitled to, that must be arranged between him and those who lose interests in the parcels sold on execution. The case of *Dacre v. Gorges, 2 S. & S. 454,* indicates how such compensation is secured under the English practice; but as no such interference is necessary to protect the purchasers on execution, we are not called upon in this case to consider what the proper method may be.

The judgment in each of the causes brought up must be reversed, with costs, and a new trial granted.

COOLEY, J., and CHRISTIANCY, CH. J., concurred.

GRAVES, J., did not sit in this case.