## Theodore J. Campau and another v. Newell Barnard.

*Partition: Tenant in common: Purchaser.* A tenant in common whose interest becomes severed by partition, is a "purchaser" of the interests of his co-tenants in the lands set apart to him.

*Execution: Levy: Defect.* A levy made during the life of a judgment debtor, cannot be cured, by proceedings after his death, of any radical defect.

*Notice of levy: Sale of lands not described.* The notice of levy filed by a sheriff in the registry, is a solemn official declaration which will not permit him—as against a purchaser from the debtor—to make a valid sale of any lands not described therein.

*Levies and sales: Statutes construed.* The law of levies and sales considered, and the statutes referred to.

*Heard July 6 and 8. Decided July 13.*

Error to Saginaw Circuit.

*W. H. Sweet, C. I. Walker* and *G. V. N. Lothrop,* for plaintiffs in error.

*Gaylord & Hanchett,* for defendant in error.

CAMPBELL, J.

Plaintiffs in error being in possession of certain property

in Saginaw county, which had once belonged to J. Joseph Campau, now deceased, to whose title as a tenant in common Theodore Campau had succeeded as sole owner under partition proceedings, the defendant in error, Newell Barnard, brought ejectment for an undivided interest, which he claimed under an execution title. The facts bearing upon this title are in substance as follows:

John J. Speed obtained judgment against J. Joseph Campau in the Wayne circuit court. Execution was issued and a levy made on lands, September 28, 1865. The execution defendant died in October, 1865. On the 25th day of November, 1865, the lands in controversy were sold by the sheriff of Saginaw county, and a deed was made, February 27, 1867, and recorded, March 2, 1867. The partition proceedings were begun, July 3, 1867. The execution was not returned until compelled by rule in July, 1870.

On the 28th of September, 1865, the sheriff filed in the register's office of Saginaw county, a written notice and certificate of levy, reciting that, under the execution referred to, he had levied on certain lands described therein; and the land in controversy was not included in the description. No other notice was filed.

The main questions presented on the principal controversy in the case, relate to the validity of the execution sale as against Theodore Campau, who, under the partition proceedings, must be regarded as a purchaser for value, and who claims that no title passed which can be asserted against him, whether it was lawful or not to sell, under regular proceedings, the property of one who was deceased before the sale.

The first question presented is, whether the sheriff took such steps as to create a levy which was valid.

Our Compiled Laws do not seem to define the method of making a levy on real estate. The judgment does not

create a lien here, as it does in some states, and it is declared that lands and tenements levied upon "shall be bound from the time of such levy."—*Comp. L.*, § *4455*.

The only levy which is in any way defined, is described in the attachment law, which declares, that, "In attaching real estate, or any right or interest in lands, it shall not be necessary that the officer should enter upon the land, or be within view of it" (§ *4749*), and that, "Real estate shall be bound, and the attachment shall be a lien thereon from the time when it was attached, if a certified copy of the attachment, with a description of such real estate, shall be deposited in the office of the register of deeds in the county where the same is situated, within three days after such real estate was attached, otherwise such attachment shall be a lien thereon only from the time when such certified copy shall be so deposited."—§ *4751*.

Under the attachment law, this notice was clearly the best legal evidence of a valid levy for any valuable use in a controversy of title.

The cases are so rare in which any question can arise concerning a levy on lands, that it is not, perhaps, surprising, that there should be some obscurity upon the subject. But, in the present case, it becomes necessary, on any theory, to determine whether there was any valid levy during the life of J. J. Campau. If there was not, then the proceedings after his death cannot cure the defect, whether they could have done so or not, had he lived.

It is certain that a levy cannot consist in any mere mental determination. It must be an act capable of being proved and clearly identified at the time when it is done. The law would not, and could not, bind any one by an act beyond his power of ascertainment.

At common law all levies upon land were accompanied by open and notorious entry and seizure of possession.

There being no sale, but only an extent, delivery of possession was a necessary incident.

All of our early execution laws followed the common-law analogies and required an actual entry and delivery of possession, or other proceedings equivalent, with immediate communication with the parties, and personal notice to parties or tenants.—See *1 Territorial Laws, 154, 864.*

The Revised Statutes of 1838 declared that no levy should bind the lands until personal notice or notice by publication.—*R. S. 1838, part 2, title 5, ch. 2.*

The laws of 1841 required the deposit of a certificate forthwith in the office of the register of deeds, and this certificate was the only evidence of a levy which could operate to create a lien. That was its sole purpose, as it was not made notice to *bona fide* purchasers.—*Millar v. Babcock, ante, 137.*

The subsequent appraisal and set-off laws all provided for personal notice in ordinary cases.

The Revised Statutes of 1846, except in attachment cases, omitted all directions as to the mode of making or notifying a levy.

The statutes of 1862, as amended in 1863, provide, in close analogy to the attachment law, that no levy shall be valid as against *bona fide* conveyances made subsequent, unless a notice is filed in the office of the register of deeds, and that, unless filed in three days after the levy, the levy should create a lien only from the date of filing.

This notice, being an official act required by law, and intended for the very purpose of enabling all persons to know what levies have been made, is primary evidence of the levy, which, as to purchasers, at least, must be held conclusive proof that nothing was levied on, which was not described in it. The sheriff's certificate or deed, of land not lawfully levied upon, could convey no title. In such

a case as this, where the execution debtor died before sale, the proof of a valid levy during his life time is as essential to be inquired into where the purchase is made after the recording of a sheriff's deed, as before. The levy itself may or may not be accessible to persons making inquiry. If the execution has not been returned, as in the present case, an inquiry might not find it; and, if found, it may, or may not, have been indorsed when it purports to have been. A paper which has always been in a public place of deposit, naturally creates more confidence in its genuineness and integrity than one which has always been in the hands of a person interested in making evidence for himself. The notice filed in the present case was a solemn declaration, under his official oath, defining the lands which the sheriff claimed to have seized. There is nothing in the law which supersedes it by any subsequent official acts or declarations. If this could be done, it would afford a ready means of perpetrating the grossest frauds. It is the only security whereby any one can be made sure that he knows what lands are levied on, and every principle of good sense and fairness requires that no person shall suffer loss from relying on it. If it contradicts the certificate endorsed on the execution, it must, so far as purchasers are concerned, prevail against the certificate, which does not fulfil the same office of actual information to the public.

We think that Theodore Campau's title under the partition proceedings must prevail over the execution title.

As the decision as to the effect of the notice in protecting a purchaser, covers the only question necessary to be disposed of, we shall not pass upon the power to sell after the death of an execution debtor, nor upon the requisites of a levy as against the party defendant, nor upon the tax-title proven on the trial.

The rulings upon the effect of the notice were erroneous.

The judgment must be reversed, and a new trial granted.

GRAVES and COOLEY, JJ., concurred.

CHRISTIANCY, CH. J., did not sit in this case.