## PELLOW *v.* ARCTIC IRON CO.

1. TENANCY IN COMMON — UNITY OF INTEREST — SEVERANCE — PARTITION—CONVEYANCE BY COTENANT.

   One of two tenants in common of minerals underlying land may not, without the consent or ratification of his cotenant, convey the interest which he owns in a portion of the entire estate, to third parties, so as to create a new and valid tenancy in common.

2. SAME—SEVERANCE—JOINT ACTION.

   Cotenants, acting in concert, may subdivide a portion of the common estate and thus create separate freeholds, an interest in any of which might be sold.

3. SAME.

   A cotenant may sell and convey the whole or any aliquot part of his undivided interest in the whole property, but he cannot, without the consent of the other, convey an undivided interest in any specific parcel of the common holding, nor can he, without such consent or subsequent ratification by his cotenant, convey by metes and bounds, a specific parcel of the common estate and thus sever it so as to bind the non-granting cotenant.

4. SAME.

   But where one cotenant assumes to convey in fee by metes and

bounds a parcel of the common estate, his deed is not void, but it creates equities in his grantee which will be protected and enforced so far as is possible without injury to the nongranting tenant.

5. SAME—PARTITION.

Such conveyance is good as between the grantor and grantee, but will not be allowed to injure the rights of the cotenant.

6. PARTITION—ESTATE IN COMMON.

A deed of a portion of property held in common by one of the joint owners, to third parties, has no effect on the interest of the cotenant, who has not consented, on partition of the premises; but where it may be done without prejudice to the rights of the other tenant, parcels so granted will be set off to the several grantees, in accordance with their equities.

7. SAME—PARTIES.

And such grantees are necessary parties to proceedings in partition.

8. SAME.

Their grantor's interest in the remainder of the estate in common would, on partition, be chargeable to make good the warranties in his deeds of conveyance.

9. TENANCY IN COMMON—PARTITION.

Nor may the nongranting cotenant disregard the deed of his granting contenant and treat it as a nullity, although it purports to convey a parcel carved out of the estate as an entirety; it imposes on him an obligation to do no act which would impair the equities created by the conveyance.

10. SAME.

If dissatisfied with the act of his cotenant, he can at once commence proceedings in partition, making the individual grantees of his cotenant parties thereto; and his rights and the rights of the grantees will be protected as far as possible, without injury to his interests.

11. SAME—CONSENT.

Or he may give formal assent to a deed conveying more than the interest of his cotenant in a portion of the estate, which would thereby pass to the grantees in accordance with their deed.

12. SAME—CONVEYANCE—ESTOPPEL AND RATIFICATION.

By a course of dealing with the remainder of the common estate by which he totally disregards equitable rights therein created by his cotenant's deed, he may be held to have acted in recognition and ratification of it.

13. SAME.

    Where one of two tenants in common of the mineral rights under land, conveyed the surface, of which he was sole owner by warranty deed, not excepting any mineral rights, and the cotenant, subsequently, with knowledge of the equities of the grantees under his deed, effected a partition of a large and valuable portion of the remaining estate which they held in common, by a lease for a long term of years, in which both tenants joined, and under which enormous quantities of the ore underlying the surface of such remaining estate were removed, their joint action ratified the deeds of the cotenant by so treating the remainder of the tenancy in common as to injure the equities which the deeds created, and which, except for the partition, could have been enforced against the grantor's share of the estate. OSTRANDER and BLAIR, JJ., dissenting.

14. SAME—EQUITY—LACHES.

    Since the cotenant indicated by his acts that the unwarranted deed of the grantor was ratified, no action on the part of the grantees was necessary to perfect their title, until a claim was set up to their interest by the successors in interest to the nongranting cotenant, and they are not chargeable with laches for failure to take action until such claim was made.

15. DEEDS—QUITCLAIM—GOOD FAITH.

    The grantee in a quitclaim deed is not a bona fide purchaser and takes no more interest than the grantor has to convey.

16. REAL PROPERTY—DESCENT—GOOD FAITH.

    Heirs can receive no greater estate or maintain no greater claim than their ancestor had.

Appeal from Marquette; Stone, J. Submitted May 4, 1909. (Docket No. 55.) Reargued June 30, 1910. Decided December 7, 1910. Rehearing denied April 1, 1911.

Bill to quiet title by Samuel Mitchell and others against the Arctic Iron Company and others. Thomas Pellow and others, as trustees of the will of Samuel Mitchell, deceased, were substituted as parties complainant in the stead of Samuel Mitchell. From a decree for defendants, complainants appeal. Reversed.

*Ball & Ball, A. C. Dustin,* and *Horace Andrews,* for appellants.

*S. W. Shaull (A. B. Eldredge* and *Moses Hooper,* of counsel), for appellees.

BROOKE, J.  The decision in the court below contains the following language:

"There seems to be force in the position of the defendants, that, because of the manner of dealing with the property herein involved by the complainants and their grantors for over 40 years, these lots 1 to 13 should be treated now as separate and independent estates."

What the grantees of Harvey actually did, was to enter into possession of the specific parcels conveyed to them with full warranties of title by Harvey. They cultivated the lands, paid taxes upon them for upwards of 40 years, conveyed rights of way to railroads crossing them, reserving title in themselves to all the minerals thereunder, and finally conveyed them with the same warranties as to title they had received from Harvey. These acts, so far from indicating an intention on the part of Harvey's grantees to acquiesce in a new cotenancy with Reynolds in the individual parcels, clearly show that they intended to buy from Harvey the whole title to the lands described, believed they had so purchased, and constantly asserted ownership to the whole thereof. Aside from the record testimony upon this point, the oral testimony of Cæsar Charles, one of the original grantees of Harvey, and the only one whose testimony was taken, places the matter beyond dispute, and I think it is equally clear that neither Reynolds nor his grantees considered that a new cotenancy had been created by Harvey's deeds, for the record fails to show that during the entire period elapsing since those deeds were made, any effort had been made by any of the owners of the Reynolds interest to pay their just proportion of the taxes. These facts are adverted to, not as in any manner bearing upon the claim of complainants to title by adverse possession, which is untenable, but as

indicating the acquiescence of Reynolds in the acts of Harvey.    Again the learned trial judge says: .

"If Harvey had the right to plat the property and sell what he owned, as it seems to me he had, this operated to segregate the property from the mass, without any act on the part of Reynolds."

This statement of the law is quoted by my Brother OSTRANDER, and upon it he says decision may be safely rested.    No authority is cited either by the learned trial judge nor by my Brother in support of this proposition.

By what right may a tenant in common carve out a parcel of the common estate and convey his interest therein to a stranger, thus creating a separate freehold and a new cotenancy between his grantee and his nongranting cotenant?    I know of none.    If Harvey could subdivide a small tract of the common estate into six-acre lots, and by conveying his interest therein to third persons thus create independent cotenancies between each of his grantees and his own cotenant, it is entirely obvious that he might subdivide the entire 1,400-acre tract into lots, not of six acres, but of one acre, or even less, and by conveying each separate lot to a different individual, he could thus create 1,400 or more new cotenancies between his grantees and his cotenant.    Simply to state such a proposition is to refute it, and yet, in principle, such a course would in no wise differ from the course he followed. Harvey's deeds warranted the title, not to his interest, but to the whole estate described therein.    Those deeds, as between his grantees and Reynolds, were just as ineffectual to pass his interest in the specific parcels described as they were to pass the entire title.    To give them effect as conveyances of Harvey's interest in the parcels described, Reynolds' assent would be just as necessary as it would be to give them effect according to their tenor.

Defendants now say they are operative to convey the individual interest of Harvey.    How did they become so? No act of Reynolds is pointed out as recognizing Harvey's

right to convey his interest in these parcels by him carved out of the common estate, which cannot with equal force be urged as a ratification in fact of the entire transaction.

The bill of complaint alleges, and the answer admits, the cotenancy of Harvey and Reynolds in the minerals underlying the entire 1,400-acre tract. The southeast quarter of section 6, from which Harvey sold, by metes and bounds, the three six-acre parcels here in question, lies in the heart of this tract, wholly surrounded by other lands held in common. This situation is wholly at variance with the facts in *Butler* v. *Roys*, 25 Mich. 53 (12 Am. Rep. 218), upon which defendant relies, and which was followed in the lower court. There the court said:

"The lots in question in these actions of ejectment all belong to the Governor and Judges plat of the city of Detroit and are separate freeholds."

There the subdivision was an ancient one, with the making of which none of the parties had anything to do. It is not to be questioned that cotenants, acting in concert, may subdivide a portion of the common estate, and thus create separate freeholds, an interest in any one of which might be sold. See authorities citied in *Butler* v. *Roys, supra,* but this is no authority for saying that one of two cotenants may alone accomplish such a severance.

A cotenant may sell and convey the whole or any aliquot part of his undivided interest in the whole property, but he cannot, without the consent of the other, convey an undivided interest in any specific parcel of the common holding, nor can he, without such consent or subsequent ratification by his cotenant, convey by metes and bounds a specific parcel of the common estate and thus sever it so as to bind the nongranting cotenant. Freeman on Cotenancy, § 199; Tiffany on Real Property, § 170; *Porter* v. *Hill,* 9 Mass. 34 (6 Am. Dec. 22); *DeWitt* v. *Harvey,* 4 Gray (Mass.), 486; *Adam* v. *Iron Co.,* 7 Cush. (Mass.) 361; *Staniford* v. *Fullerton,* 18 Me. 229; *Lessee of White* v. *Sayre,* 2 Ohio, 110. But where one cotenant assumes to convey in fee, by metes and bounds, a parcel

of the common estate, as Harvey did in the case at bar, his deed is not void, but it creates equities in his grantee which will be protected and enforced so far as is possible without injury to the nongranting cotenant.

Mr. Justice MONTGOMERY, speaking for the majority of the court in *Mee* v. *Benedict*, 98 Mich. 260 (57 N. W. 175, 22 L. R. A. 641, 39 Am. St. Rep. 543), said:

"But it seems the more correct way to state the result of the authorities is that such a conveyance is good as between the parties to it, but that it is not to be permitted to affect injuriously the rights of the cotenants. This results in nothing more than that, on partition, the cotenant should be entitled to partition, precisely as though no conveyance had been made. But it seems to me a manifest perversion of justice to say that, because the law declares that the cotenant may not have his rights injuriously affected by such a conveyance, he may profit by the fact that he is a cotenant, and that circumstance shall enable him to defeat the right vested in the grantees of his cotenant."

Freeman on Cotenancy, § 199, says:

"Although the deed does not impair the rights of the other cotenants, it by no means follows that they may treat it as void, or entirely disregard it. While falling short of what it professes to be, it nevertheless operates on the interest of the grantor, by transferring it to the grantee. The latter acquires rights which the cotenants ought to be bound to respect. They ought not to be permitted to ignore his conveyance, and treat him as one having no interest in the property."

Again, at section 205, the same author says:

"But while no such grantee has an absolute legal right to have the part granted to him set off to him or to his grantor upon partition, yet he has rights which will receive the consideration of the court, and will be respected as far as they can be without prejudice to the rights of the other part owners. The court, wherever the interest of the other owners will not be impaired thereby, will set off to grantees of specified parcels the tracts included within their respective deeds."

If Reynolds had instituted proceedings for partition of

the common estate after Harvey had conveyed the several parcels in dispute, Harvey's grantees in those conveyances would have been necessary parties, and the equities created by their deeds would have been worked out and protected. See authorities cited in *Mee* v. *Benedict, supra.* In such a proceeding, Harvey's interest in the balance of the cotenancy, or so much thereof as might be necessary, would be charged to make good the warranties contained in his deeds of the several parcels here in dispute.

Mr. Justice HOOKER, in his opinion in *Mee* v. *Benedict, supra,* uses the following language:

"But while the conveyance of a portion by one tenant in common may be disregarded by his cotenant, if such cotenant or any other person shall, with notice of the grantee's interest, choose to unite the different titles by purchasing the remaining interest of the grantor, he may be held to assent thereby to such conveyance by recognizing the right of the grantor to deed in parcels, and he will take the title of the grantor subject to the rights of the prior grantee which equity may compel him to recognize and satisfy. While a tenant in common may insist upon his own, he will not be permitted, in such a case, to collude with his cotenant, or profit by his fraud"—citing cases.

See, also, *Campau* v. *Godfrey,* 18 Mich. 27 (100 Am. Dec. 133), and cases cited, where Mr. Justice CHRISTIANCY said:

"On the other hand, the lands held by the same tenancy may be so situated, or the amount of them so great, that in many cases the interest of the cotenants would not be prejudiced on partition by giving full effect to such conveyance. And this might sometimes happen in the case of a single tract only, especially of a large one, or so situated as to admit of a perfectly fair partition into such parts as might be required to give effect to the deed. And whenever, upon a fair partition, that part of the property in which an interest had been conveyed should be set off to the party selling or to his grantee, the other cotenants receiving their full share in as advantageous a form as if the conveyance had not been made, the whole ground of objection to the conveyance would seem to fail."

In *Worthington* v. *Staunton*, 16 W. Va. 209, the court says:

" Such deed will become operative and pass to the purchaser of such lands by metes and bounds, if the other tenants in common before partition confirm and ratify it; and after partition if that portion is allotted to the purchaser; and in either case said deed will be binding on both the grantor and grantee."

Particular attention is directed to the case of *Young* v. *Edwards*, 33 S. C. 404 (11 S. E. 1066, 10 L. R. A. 55, 26 Am. St. Rep. 689), where, as here, the nongranting cotenant claimed that the deed of his cotenant in fee conveyed, at most, the interest of the grantor in the parcel particularly described. This claim was denied by the court and it was decreed that inasmuch as the parcel deeded in severalty by one of the owners could be set off to the grantee of such owner without prejudice to the other owners, that course should be followed.

In *Cook* v. *Railway Co.*, 3 Tex. Civ. App. 125 (22 S. W. 1012), one of four cotenants conveyed in fee a right of way across the common estate, to the railroad company. After this deed was made, the four cotenants divided the balance of the estate equally. Thereafter, the three nongranting cotenants brought suit against the railroad to recover their interest in the right of way. Their right to recover was denied by the court which, after adverting to the fact that the cotenants had partitioned the balance of the common estate among themselves without making the railroad a party, said:

" Such proceedings were equivalent to a recognition of the right of the defendant to have the land set apart to it, because all of the rest of the land was appropriated by the plaintiffs, and the defendant could not have a proportional part of the land set apart to it elsewhere in the tract, if it should appear inequitable for it to retain the identical tract conveyed to it by the plaintiffs' cotenants."

See, also, *Barnes* v. *Lynch*, 151 Mass. 510 (24 N. E. 783, 21 Am. St. Rep. 470), and *Soutter* v. *Porter*, 27 Me. 405.

We have seen that the nongranting cotenant may not disregard the deed of his granting cotenant and treat it as a nullity. While such deed cannot be permitted to operate to his prejudice, nevertheless it imposes upon him an obligation to do no act which would impair the equities created by his cotenant by the execution of the deed. If dissatisfied with the act of his cotenant, he can at once commence proceedings in partition, making the individual grantees of his cotenant parties thereto. In such proceeding, his rights will be fully protected and the rights of the individual grantees will not suffer, if they can be preserved without injury to the interest of the nongranting cotenant. This right of the nongranting cotenant is clear, while the right of the grantee of a specific parcel to demand partition of the entire estate is, at least, doubtful. See *Campau* v. *Godfrey* and *Mee* v. *Benedict, supra.* The nongranting cotenant may, of course, give formal assent to the unwarranted act of his granting cotenant, in which event the individual grantees take exactly what the deed purports to convey. Or he may by a course of dealing with the balance of the common estate, in which he totally disregards the equitable rights created by his cotenant's deed, be held to have so acted in recognition and ratification thereof. This ratification, if clearly made out, would and ought to have the same effect as a formal assent.

My Brother OSTRANDER holds that ratification has not been made out. To this I cannot assent. Harvey's deeds to complainants' grantors were made and recorded in 1867 and 1869, and the grantees therein named immediately went into possession thereunder. The title to the balance of the common estate appears to have remained in Harvey and Reynolds until about February 1, 1871. On that day, by separate instruments, Harvey and Reynolds leased the mineral rights in a very large proportion of the balance of the cotenancy to one Edward Breitung for a long term of years, upon royalty. These leases refer to each other and in effect amount to a joint convey-

ance.  They affect only the mineral estate, title to which was common in the grantors, and under them millions of tons of ore have been removed and the royalty thereon paid to either Harvey or Reynolds, or their respective successors in title.  This amounted in fact to a partition of the common (mineral) estate to the extent said estate was reduced by the removal of ore.  In joining in this lease, Reynolds acted with constructive notice, and, in my opinion, actual knowledge of Harvey's deeds of the parcels here in dispute.  Harvey's grantees were in possession, which possession put all parties in interest upon inquiry.  *Edwards* v. *McKernan,* 55 Mich. 520 (22 N. W. 20).  See, also, *Fuller* v. *Swensberg,* 106 Mich. 305 (64 N. W. 463, 58 Am. St. Rep. 481); *Campau* v. *Barnard,* 25 Mich. 381; *Tharp* v. *Allen,* 46 Mich. 389 (9 N. W. 443).

He likewise had knowledge of the infirmity of a conveyance by one of two cotenants, as is indicated by the letter written by his son and attorney in fact, William C. Reynolds, in his interest to Edward Breitung during the negotiations for the lease.  Harvey had already executed a lease to Breitung, covering his interest in the minerals underlying the common estate.  Reynolds writes:

"Your present lease from Harvey is, of course, not worth anything, standing by itself, because a tenant in common cannot thus dispose of his interest in a specific part of the common property.  This rule of law is well settled.  But if father and Harvey join, it would make you secure."

This letter is dated December 13, 1870, more than three years after the first of Harvey's deeds to complainants' grantors had been recorded.

In 1870 or 1871 Reynolds, desiring to partition the estate held by himself and Harvey, had two courses open to him.  He might give his assent to Harvey's conveyances, or he might resort to the court for a partition, making Harvey's grantees parties to his proceeding.  He

chose the former alternative, and there appears to have been every reason why he should do so. In the first place, he had no interest in the surface of the lands conveyed by Harvey. Secondly, the record clearly establishes the fact that the mineral deposit was not supposed to underlie those parcels; and lastly, by ratifying Harvey's deeds and surrendering his rights (then supposed to be valueless) in the minerals underlying those lands, he placed himself in a position to deal with the remainder of the common estate, known to be of great value, unhampered by the necessity of determining the nature and extent of the equitable rights created therein by the warranties in Harvey's deeds.

It is clearly established, upon the record, that if Reynolds had chosen to repudiate Harvey's deeds and demand partition of the common estate, the interests of Harvey's grantees would have been fully protected, for his interest in the balance of the cotenancy was many times greater than Reynolds' interest in the small parcels conveyed by him to complainants' grantors. There is no doubt that in such a proceeding, taking into consideration the large area of the common holding, the parcels conveyed by Harvey would have been set off to his grantees according to the description contained in his deeds. The mere fact that it was difficult or even impossible to partition the mineral estate by metes and bounds with absolute equity, in no wise changed or lessened the legal obligation resting upon Reynolds to recognize, and, so far as was possible without injury to himself, protect the equities created by the deeds of his cotenant.

The acts of Reynolds and Harvey and their several successors in the title which accomplished the removal of the ore, and the partition *pro tanto* of the common estate, were matters of record of which Harvey's individual grantees had constructive notice. They must likewise have had actual notice of the diminution of the estate, for many mines were opened and enormous quantities of ore removed therefrom in their immediate vicinity. Inasmuch

as these acts were inconsistent with a repudiation by Reynolds of Harvey's deeds, complainants' grantors doubtless believed, and they were justified in believing, that Reynolds had ratified the grants made by Harvey to them and was acting in recognition thereof. This disposes of the question of laches. Reynolds could, by his acts, perfect the title of Harvey's grantees. If he did so, no action on the part of the complainants or their grantors was necessary until a claim was set up by Reynolds' grantees to an interest in their lands.

The defendants together hold a very large part of the interest of both Reynolds and Harvey in the common estate, as it stood after Harvey's deeds to complainants' grantors, less, of course, the ore removed. The defendant the Arctic Iron Company acquired title to Reynolds' mineral interest in a part of the lands here in question, by quitclaim deed from Edward Breitung, in 1883. Breitung and one William P. Healy had, in 1882, jointly purchased from Reynolds his interest in a large tract, including the parcels here in dispute. Instead of deeding to Healy his half of the interest so purchased, the defendant the Arctic Iron Company was organized, and the stock divided equally between Breitung and Healy. The grantee in a quitclaim deed is not a bona fide purchaser, and takes no more interest than his grantor has to convey. *Messenger* v. *Peter*, 129 Mich. 93 (88 N. W. 209), and cases cited. Healy was sworn and testified that, at the time of the purchase in 1872, he knew, from an examination of the title, of the Harvey deeds and their warranties. At that time, Edward Breitung had, by various conveyances, become the owner of the entire interest of Harvey in a large part of the common estate. This interest he had acquired long after the making and recording of Harvey's individual deeds, and with constructive notice and probably actual knowledge of the warranties therein contained.

Defendants Mary Kaufman and Edward N. Breitung are respectively widow and sole heir of Edward Breitung, deceased, and are now the owners of his interests by in-

heritance. They set up a claim to one-half of the minerals underlying that portion of the lands in dispute, not deeded by quitclaim by Edward Breitung to the Arctic Iron Company. The position of these defendants. is no stronger than that of their ancestor, and if he could not assert such a claim, they will not be permitted to do so. Quite aside from the legal considerations involved, which are conclusive against the contention of the defendants, I am of opinion that, inasmuch as by the acts of defendants' grantors a partition in which the equitable rights of complainants can be protected has now become impossible, it would be grossly inequitable to permit them to take advantage of those acts and maintain the claims now asserted by them.

The decree of the court below should be reversed, and a decree entered in this court in accordance with the prayer of complainants, with costs of both courts.

BIRD, C. J., and HOOKER, MOORE, and MCALVAY, JJ., concurred with BROOKE, J.

On February 26, 1857, James L. Reynolds, who was owner in fee simple of a large tract of land, sold and conveyed a portion thereof, situated on sections 1, 2, 3, 4, 5, 6, 7, and 8, in township 47 north, of range 26 west, on sections 31 and 32 in township 48 north, of range 26 west, and on section 6, township 47 north, of range 25 west, to Charles T. Harvey. His deed of the said lands recited:

"Which lands are sold with full warranty; subject, however, to the conditions and agreements of the contract marked 'A' herewith appended between the parties hereto concerning the undiscovered minerals on said lands."

The contract A referred to reads as follows:

"This memorandum of agreement, made this 26th day of February, by and between James L. Reynolds, of Chicago, State of Illinois, of the first part, and Charles T. Harvey, of Marquette county, State of Michigan, of the second part, witnesseth:

"That the party of the first part has this day conveyed by warranty deed (to which this contract is attached), to the party of the second part certain lands therein described, amounting to four thousand one hundred and sixty-two $\frac{46}{100}$ acres for the consideration of the sum therein named, and also in the further consideration of reserving to himself an undivided half interest in and to all the minerals which have been or may be discovered on the premises referred to as conveyed, together with the right of having or acquiring so much of the surface privileges as may be necessary to mine or develop the same, by paying one-half of the equitable or appraised valuation per acre, for the surface thus used or acquired: Provided not more than twelve dollars per acre shall be adjudged to be the value of unimproved lands taken for such mining purposes, besides which, however, full compensation shall be paid to the party of the second part or his assigns for damages, which may by such mining or occupancy ensue to the business connected with or improvements placed upon such land, by the party of the second part or his assigns, such payment to be made by the party of the first part on an equitable, agreed value, or upon an appraised valuation made by disinterested referees, one designated by each party (hereto) and they choosing a third, and the decision of the three thus chosen to be final, and when such payment is made he of the first part shall be entitled to enter upon and occupy any portion of said lands for mining purposes as aforesaid solely. Provided, and it is agreed, however, that the party of the second part, or his assigns, shall have the sole right, free of cost or compensation to the party of the first part, to mine for their own use or for manufacturing purposes within the present limits of Marquette county, any mineral ores, or marble found on any of the premises herein referred to, but shall have no right to sell to other parties for exportation as aforesaid without accounting to the party of the first part for his joint half interest therein.

"In witness whereof, the parties hereto have set their hands and seals the day and year first above written.

"CHARLES T. HARVEY.
"JAS. L. REYNOLDS."

The deed and the contract were duly recorded in the office of the register of deeds for Marquette county in July, 1857. In February, 1871, a further instrument was executed by these parties, in explanation of the contract A,

but in no way changing the provisions which are of importance here. It was duly acknowledged and was recorded March 4, 1871.

After receiving his deed, and in April, 1857, Harvey conveyed more than 2,600 acres of this land to one grantee and in the succeeding year conveyed another and smaller portion to the same grantee, subject to the reserved rights of Reynolds in the minerals. He also platted some of the land on section 6, township 47 north, of range 26 west, but without recording any plat, into parcels known as lots 1 to 13, inclusive. They were each 10 rods wide, bounded on the north by the quarter line through center of the section, and were not all of the same length. In April, 1866, he conveyed by warranty deed to Edward Breitung lots 10 and 12 and other lands. Later, Breitung and wife by quitclaim deed reconveyed all claim under the warranty as against the reserved rights of Reynolds, "inadvertently omitted to be mentioned" in the deeds of warranty. In January, 1867, Harvey sold and conveyed, by metes and bounds, for an actual and expressed consideration of $100 each, to three grantees, three of these lots, viz., lots 8, 9, and 11. He executed to the purchasers, respectively, warranty deeds containing no reservations or exceptions. These deeds were duly recorded, the purchasers entered into possession and cleared, improved, and built upon the premises. The parcels contain, respectively, $6\frac{2}{10}$ acres, $6\frac{4}{10}$ acres, and $6\frac{8}{10}$ acres, and for some 40 years have been assessed for taxation as lots 8, 9, 11. It was not supposed at the time that there were ore deposits in the platted lands. Large bodies of ore have been opened in some of the lands conveyed by Reynolds to Harvey, some of them in the 1,400 acres of which Harvey remained owner in 1858, a number of mines have been and are being worked and large quantities of iron ore have been taken therefrom. The property in question in this suit is the undivided one-half of such minerals as are contained in the three parcels of land (lots 8, 9, 11) conveyed by Harvey by his warranty deeds in 1867. Complainants have

acquired the rights of Harvey's grantees.   The defendant Arctic Iron Company has succeeded to such rights as Reynolds had in a portion of said lands and minerals, and the defendants Breitung and Kaufman have acquired like rights in the remainder.

It is charged in the bill of complaint that the lands contain valuable deposits of iron ore which could be profitably mined by complainants but for the asserted right of defendants to an undivided one-half of such ore.   The answers of defendants admit complainants' ownership of an undivided one-half of the mineral deposits.   They assert that defendants own the other undivided half thereof, with such rights in the surface of the land as are stated and secured in the said contract A.   In each of the answers, also, the source and devolution of the defendants' title are set out with prayers for affirmative relief. The prayer of the bill and the relief prayed for in the answers is that said mineral rights may be quieted.

In the answer of the complainants to the cross-bill of the defendant Arctic Iron Company, after reciting various dealings with the Reynolds-Harvey tract, the said platting of a portion of the lands, the sale and conveyance of the particular parcels here in question and others, it is alleged:

"On large portions of said original tract of land embraced in said sections five (5), six (6), seven (7), and eight (8), other than the lands and lots in controversy in this cause, claimed by complainants, and similar lots sold by said Harvey as aforesaid, and other than the lands so conveyed to the Pioneer Iron Company, as hereinbefore stated, there exist and for a long time have been known to exist, large, extensive, and valuable deposits and mines of iron ore, and such mines have been especially discovered, located, and developed upon the property conveyed by and through said Harvey to said Breitung, and upon the lands claimed and held by said Breitung, his heirs, representatives, and grantees, as well as upon the lands conveyed to the Negaunee Iron Company, as aforesaid; that the deposits and mines of iron ore so existing upon those portions of said lands which were acquired by

said Edward Breitung, as aforesaid, and which were acquired by said Negaunee Iron Company (being lands other than those claimed by these complainants and similar lots conveyed by said Harvey, as aforesaid), far exceed in extent and value the value or extent of any minerals or deposits of ore upon the lands claimed by these complainants, and the other lots so sold by said Harvey; and upon any partition of said lands between said Charles T. Harvey and said James L. Reynolds and his heirs and devisees, said Cæsar Charles, Maxime Perin, and Jean Blais (grantees of said Charles T. Harvey, as aforesaid), and their grantees, would have been entitled to have said parcels of land so conveyed to them set off to said Charles T. Harvey, so that his title to the lands so set off to him would inure to their benefit under and through said warranty deeds of said Charles T. Harvey to them. Said James L. Reynolds, said Edward Breitung, and the said Arctic Iron Company have long acquiesced in and consented to the rights of complainants and their grantors, as owners in fee simple of the property described in the bill of complaint, and by their acts and dealings hereinbefore set forth, they have recognized the said ownership of these complainants in such lots and lands. By reason of the conveyances aforesaid, and the aforesaid dealing with said lands by Charles T. Harvey and his grantees, and said James L. Reynolds, his devisees and their grantees, a partition of said lands, whereby the equities of said parties could be so adjusted as to protect the rights and interests of complainants otherwise than in the specific lots themselves, has become impossible, and to deprive these complainants of said property or any interest therein would constitute a fraud upon their rights, by reason of which all of said parties, and particularly said Arctic Iron Company, are estopped to deny that said parcels of land and all interests and rights therein belong to these complainants in fee simple."

At the circuit it was held that the ores were owned in common by complainants and defendants, and a decree was made dismissing the bill. Complainants have appealed.

OSTRANDER, J. (*after stating the facts*). Upon this record and the applicable rules of law, is the contention of complainants, that they are owners of all minerals in

the particular parcels of land, viz., lots 8, 9, 11, of Harvey's plat, sustained?

It will be convenient to first ascertain and state the relations between Reynolds and Harvey which resulted from the conveyance and the contract which have been referred to. In presenting this case in the court below and in this court the term "estate in fee," has been applied to the mineral estate, and the terms, "cotenancy" and "tenants in common," have been employed to denote the manner in which the mineral estate was held and the relations of those interested therein to the said estate and to each other. Indeed, complainants' case depends upon the application to the facts of rules of law controlling and affecting estates owned by tenants in common.

The deed from Reynolds to Harvey and the accompanying agreement were examined in this court in *Negaunee Iron Co.* v. *Iron Cliffs Co.*, 134 Mich. 264, 279 (96 N. W. 468), and it was held that the contract was a part of the deed, the two should be construed as one instrument, and that Reynolds did not convey the entire fee to Harvey and then repurchase by the contract an interest in the lands, but that he carved the estate into two parts, conveying one and retaining the other.

Ordinarily a deed of land conveys the soil and all which it contains, within the boundaries of the particular description. The owner of the fee of land may, however, convey the surface rights and reserve a fee in the mineral rights, and, having done so, each estate will be subject to the law of descent, devise, and conveyance. *Kincaid* v. *McGowan*, 88 Ky. 91 (4 S. W. 802, 13 L. R. A. 289, and note). Such a severance of estates may be worked, also, by a grant or a reservation of less than a fee estate in the minerals (*Armstrong* v. *Caldwell*, 53 Pa. 284), and when such severance, however brought about, takes place, possession of the surface does not, as to the minerals, give rise to the presumptions usually attendant upon such possession. 1 Cyc. 994; *Gill* v. *Fletcher*, 74 Ohio St. 295 (78 N. E. 433, 113 Am. St. Rep. 962); *Marvin* v. *Min-*

*ing Co.*, 55 N. Y. 538 (14 Am. Rep. 322); *Seaman* v. *Vawdrey*, 16 Vesey, 390. It is said (Freeman on Cotenancy, § 88) that a "tenancy in common may exist in every species of property, real, personal, or mixed," and undoubtedly this is literally true. It has been held, too (*Canfield* v. *Ford*, 16 How. Prac. [N. Y.] 473; *Id.* 28 Barb. [N. Y.] 336; *Hughes* v. *Devlin*, 23 Cal. 505), that an estate in minerals, being an estate in fee, may be partitioned.

It is nevertheless important to keep in mind, in cases where severance of the mineral from the surface estate has been brought about in a large tract of land, not only the terms of the instrument by which the severance is worked, but also the character and extent of the mineral estate. It is manifest that if but two or three deposits of ore existed in 1,400 acres of land, each deposit lying at a considerable distance from the others, while an estate in fee in all the mineral might exist it would be substantially like an estate of inheritance in widely separated parcels of land, and each might be treated as a distinct freehold. The sale by a tenant in common of his undivided interest in one deposit would not necessarily, in such a case, make the purchaser a tenant in common in the whole mineral estate, and partition might proceed as to each deposit of ore. See *Butler* v. *Roys*, 25 Mich. 53 (12 Am. Rep. 218). It is not claimed that there is ore in all of the land deeded by Reynolds to Harvey or in all of the 1,400 acres remaining unsold in 1867. It is matter of common knowledge, too, and if it were not it is made apparent by the record in this case, that ores lie at different levels below the surface, are of different qualities and values. The instrument called "A," to which reference has been made, anticipates and provides for the dealing with the mineral estate by either party. It is apparent that the enjoyment of the estate by mining and removing the ores is contemplated, and, so long as the right of the other to compensation is recognized, either was at liberty to mine and to sell ore. Indeed, for certain uses, Harvey and his assigns

were entitled to mine ores without accounting to Reynolds. If Reynolds, his lessees, or grantees, desired use of the surface in conducting mining operations, it might be acquired upon terms. In the size of the tract of land, ignorance of the extent and value of the deposits of ore, the usual methods of enjoying such an estate, and convenience, may be found reasons for the terms of the contract by which, and by the deed, the severance of the estates, the relations of the parties and their assigns, were established. Therefore, while the estate in the minerals may be considered as an estate in fee for the purposes of conveyance, of devise, and descent, and as an estate of which Harvey and Reynolds owned each an undivided one-half, it was one expressly intended to be divided, from time to time, by either, and the terms, "tenancy in common" and "tenants in common," are apt terms to denote the character of the estate and the relations existing between Reynolds and Harvey only when their ordinary meaning, in the law, is somewhat modified.

The pleadings and the arguments of counsel proceed upon the theory that the deeds of Harvey which are relied upon conveyed some interest in the minerals. Defendants contend that they conveyed to the grantees no more than an (his) undivided one-half of the ores which are contained in the land described in the deeds. Complainants, as already appears, contend that the earlier deeds made by Harvey, they having been ratified and confirmed by Reynolds, severed from the original tenancy the lands described therein, leaving Reynolds and Harvey tenants in common in such mineral as was contained in the remainder of the land; that as to the purchasers of the lots in question, while they had constructive notice of the existing cotenancy and in law took subject to the rights of Reynolds as shown by the record, yet they received rights as against Harvey and his share in the tenancy in common, "that the title as conveyed by the deeds from Harvey be made good, which rights could not be disre-

garded by Reynolds." It is further claimed (I quote from
the brief)—

" That with such right the grantees openly occupied the
premises and claimed the entire title thereto for more than
40 years, and that with notice of these deeds and the
rights conveyed thereby, Reynolds and his grantees had
recognized and ratified and consented to the conveyances
so made; and they had so dealt with the remaining parts of
the cotenancy as to preclude them from denying that they
had ratified and made good the conveyances by Harvey to
his said grantees."

No one questions the soundness of the rule which ac-
cords to the purchaser from a cotenant, in severalty, of a
portion of the common estate, the right, in equity, to suc-
ceed upon partition to some share in the estate. And the
rule that cotenants may, after notice of such a purchase,
so deal with the estate as to ratify and confirm the at-
tempted severance and partition by one cotenant is one
familiar to the profession. See Freeman on Cotenancy,
§§ 205, 207; *Campau* v. *Godfrey,* 18 Mich. 38 (100 Am.
Dec. 133); *Butler* v. *Roys, supra*; *Mee* v. *Benedict,* 98
Mich. 260 (57 N. W. 175, 22 L. R. A. 641, 39 Am. St.
Rep. 543); *Young* v. *Edwards,* 33 S. C. 404 (11 S. E.
1066, 10 L. R. A. 55, 26 Am. St. Rep. 689). These rules
cannot properly be applied in this case. One reason for
not applying them has been given. It arises out of the
original agreement of the parties, which, in substance and
effect, provides that each, and the assigns of each, may
deal with portions of discovered ore bodies—with the min-
eral estate. It was contemplated that as mines were
opened and worked corresponding partition should take
place. They subdivided the estate into separate parcels,
not by metes and bounds, or by particular description, or
in advance of the use of particular portions thereof, but
none the less actually. In this sense partition—division—
of the mineral estate has been going on for years, with
the knowledge of which fact, as well as of the original
recorded agreement, all parties in interest are chargeable.
The learned trial judge said:

" If Harvey had the right to plat the property and sell what he owned, as it seems to me he had, this operated to seggregate the property from the mass, without any act on the part of Reynolds."

Decision may be safely rested here. There are, however, other considerations which compel me to reach the conclusion that complainants are not entitled to more than the deeds of Harvey gave them.

No obligation rests upon one tenant in common more than upon another to bring about a partition of the common estate. Ratification, in fact, by Reynolds, or by any one representing his interest, of a conveyance by Harvey of a larger estate in the minerals than he owned is not made out. As has been stated, complainants as well as defendants are chargeable with knowledge of the actual course and sequence of events affecting the property. The proposition that the vendees of Harvey may sit by for 30 years before discovering that they have any interest in the mineral estate, and for years thereafter before attempting to enforce such rights as they now allege in the common estate, is not one which appeals to a court of equity. Indeed, it appearing that but $100 was paid for each of the parcels of land in dispute, and that it was supposed by no one that there was mineral in the land conveyed, equity should, after this lapse of time, leave the grantees of Harvey to such remedies as the law affords them.

The decree should be affirmed, with costs.

BLAIR, J., concurred with OSTRANDER, J.