CARLOS CARLE DUBOIS, Plaintiff and Appellant, *v.* JOSÉ J. BENÍTEZ, Defendant and Appellee.

No. 6220. Argued December 20, 1933.—Decided February 9, 1934.

*Largé & Acevedo* for appellant. *González Fagundo & González, Jr.,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Carlos Carle Dubois brought an action of debt against José J. Benítez and, in order to secure the effectiveness of the judgment, he attached, as belonging to the defendant, a parcel described in the complaint; and notice of the attachment was entered in the registry of property.

After the suit had been decided in favor of the plaintiff and the defendant adjudged to pay the sum of $6,689.84, and upon the judgment becoming final (*firme*), a writ of execution was issued and the sale at public auction of the attached property was ordered.

José J. Benítez e Hijos, claiming to be a community of property (*comunidad de bienes*), composed of José J. Benítez Díaz, Teodosia Tadea Benítez y Sampayo, Carlota Benítez y Sampayo, Josefa Benítez y Sampayo, Arcadia Benítez y Sampayo, and José de Jesús Benítez y Sampayo, filed a complaint in intervention (*demanda de tercería*) against Carlos Carle Dubois and José J. Benítez. In said complaint it was averred that the attached property belonged exclusively to the alleged community of property (*comunidad de bienes*) of José J. Benítez e Hijos. With said complaint was filed a petition for a writ of injunction against the defendants and the marshal of the District Court of San Juan, to restrain them from selling the attached property at public auction.

On May 13, 1932, the District Court of San Juan, considering that the creditors of José J. Benítez would be entitled only to such part of the common property as belonged to him, and in no wise to the whole estate, enjoined the holding of the public auction of the attached property until the claim in intervention should be finally determined.

Thereupon Carlos Carle Dubois, plaintiff and creditor of José J. Benítez by virtue of a judgment rendered against the latter, moved the court to order the execution of the judgment rendered, by selling at public auction all the right, title, interest, and share which the defendant, José J. Benítez, might have in the property. The court so ordered and it directed that the clerk issue the proper writ to the marshal to carry out the petition of the plaintiff and creditor of José J. Benítez. Both orders were made by Hon. A. R. de Jesús, Judge of the District Court of San Juan.

The defendant, José J. Benítez, moved that the order of execution issued by Judge De Jesús on June 29, 1932, be declared void and without any force or effect. The lower court, through Hon. Pablo Berga, sustained the motion of the defendant, José J. Benítez, and vacated the said order of execution and the subsequent proceedings for the sale, at public auction, of all the right, title, interest, and share held

by José J. Benítez in the attached property. The plaintiff took an appeal from that decision and has assigned four errors, which we will presently consider.

The first assignment is without merit. It is claimed that the lower court sustained the motion of the defendant, José J. Benítez, and suspended the auction sale set for July 22, 1932, on a motion the notice of which was not timely served on the defendant and without a day being set for the hearing thereof; the motion having been decided without said defendant having been heard, and behind his back. This assignment of error does not seem entirely clear. One infers from reading it that the plaintiff complains that the auction sale was suspended without his having been heard. The error attributed to the court, however, consists in its having refused to strike out certain motions because notice of the setting had not been served on the plaintiff five days in advance. From the record it clearly appears that notice of the motion filed on July 14, 1932, by the defendant, José J. Benítez, to annul the order of execution of June 29, 1932, was duly served on the plaintiff. This supposed error must be dismissed.

The three remaining assignments may be condensed into one. It is urged that the lower court erred in concluding that the order of May 13, 1932, made by Judge De Jesús, is in conflict with the order of June 29, 1932, made by the same judge, and prevents its execution and effectiveness. It is also urged that the court erred in declaring that the said order of May 13, 1932, made in the intervention proceeding, should prevail over the order of execution made by Judge De Jesús on motion of the plaintiff, Carlos Carle Dubois, in the suit begun against José J. Benítez. Finally, it is asserted that the lower court erred in declaring that until the writ of injunction were vacated or modified, nothing could be done towards executing the judgment either on the whole property or on any part thereof.

The court *a quo,* in its order of August 9, 1932, declared that the order of May 13 of the same year contradicts that of June 29 and prevents its execution and effectiveness as long as the prohibition of the former is not modified or revoked. We feel that the last order is entirely compatible with that of May 13, 1932, wherein Judge De Jesús sets forth the following statements:

"According to the evidence presented by the plaintiffs in intervention, the community of José J. Benítez e Hijos holds the ownership to the parcel in question, and although the defendant in the principal case, José J. Benítez, is a member of said community, his creditors would be entitled only to such part of the common property as might belong to him, and in no wise would they be entitled to the whole estate. In the instant case it is sought to sell the whole property at public auction. We believe that the community of property (*comunidad de bienes*) of José J. Benítez e Hijos has a right to prevent the sale of the whole property in question at public auction to satisfy a debt of one of the co-owners...."

On June 29, 1932, the same Judge De Jesús, on motion of the plaintiff and in conformity with the order made on May 13, 1932, ordered the clerk to issue the proper writ to the marshal to execute the judgment rendered, by selling at public auction all the right, claim, interest, and share that, under any title, might belong to the defendant, José J. Benítez, in the parcel, which the members of the alleged community claim as belonging to them.

As may be seen, in the first order Judge De Jesús ruled that the property, which belongs to the co-owners, could not be sold as a whole to enforce the collection of a debt owed by the defendant, José J. Benítez, but he left unimpaired the right of the judgment creditor to enforce his credit on the share in the community that might belong to the said José J. Benítez. The injunction granted by Judge De Jesús prevents the sale of the whole property to satisfy an obligation contracted by one of the co-owners, but it in no wise prohibits the judgment creditor from levying upon the share or

interest belonging to the co-owner, against whom the judgment was rendered.

The defendant argues, however, that as the property is held in common, no creditor can attach the interest of a partner in any specified portion of the estate, "but only the interest that the partner might have in the community as a whole, since a co-owner is a partner."

We do not share the opinion of the appellee. Communities and partnerships are governed by totally different principles. Manresa (11 *Comentarios al Código Civil*, p. 257) points out that "If every partnership implies a community, it cannot likewise be said that every community constitutes a partnership." The two things are distinct, according to the same commentator, by reason of their respective juridical nature, their different sources, and their ends or purposes. A partnership is characterized by the idea of gain, the expectation of profits that can be distributed among the partners —an element that is not observed in the community. In the latter, each co-owner may sell or encumber his part, or a fraction thereof, without the consent of the others, and thereby other members enter the community. A partnership is composed only of the persons determined in the contract, so no partner can alienate his part or bring in another partner except with the consent of the others. Section 1587 of the Civil Code, 1930 edition, and section 120 of the Code of Commerce, 1932 edition.

In the complaint in intervention it is alleged that upon the death of Carlota Sampayo, first wife of José J. Benítez, an inventory and liquidation was made of all the existing properties, and a community was constituted of all the properties remaining at her death, one of these properties being the parcel attached as exclusively belonging to José J. Benítez. It is thus clearly seen that the property of the community is not limited exclusively to the real property mentioned but includes all the property left at the death of said Carlota Sampayo.

The plaintiff, in order to collect his credit, selected a parcel that formed part of the property of the community and attempted to sell at public auction the share or interest that the defendant might have in said parcel.

We agree that the right of each co-owner covers the whole of the property the object of the community in proportion to the amount that each one may have in the common property, and that it is not confined to any concrete part or portion of the said property. It is undeniable, however, that the abstract share of each one of the co-owners comprises the whole and the part and extends from one extreme to the other of the common property, so that it could not be detached from the common property without affecting the rights of the other participants. The co-owner may dispose of his part by freely alienating or encumbering it, with the authority and consequences inherent in individual property.

Section 33 of our Civil Code provides that every part owner shall have the absolute ownership of his part, and of the fruits and profits derived therefrom, and he may, therefore, sell, assign, or mortgage it, and even substitute another in its enjoyment and lease it, unless personal rights are involved, but the effect of the sale or mortgage, with respect to the other participants, shall be limited to the share which may be allotted to him in the partition upon the dissolution of the community; and the effect of the lease shall be to confer upon the lessee, during the term of the contract, the powers of a co-owner for the purpose of the administration and better enjoyment of the common property.

In commenting on section 399 of the Spanish Civil Code, equivalent to section 333 of our Civil Code, 1930 edition, Manresa, in volume 3, pages 463 and 464, of his Commentaries on the Civil Code, says:

"Hence, the section the subject of this commentary determines with all clearness that the co-owner has the absolute ownership *of his part,* that is, of what represents his participating share in the whole of the community, as well as of the fruits and benefits which,

according to the provisions of section 393, and specifically under the second subdivision thereof, would belong to him as part owner of the property held in common. By carefully studying the concept of the community, which supposes, as long as it subsists, a juridical condition of indetermination in the undivided properties that constitute it, one will understand perfectly that the ownership rights, in their effective exercise, are understood to be circumscribed to that part which, in the undivided whole, represents the participating interest.''

The Supreme Court of Spain has repeatedly declared that the power granted to the co-owners of a property to sell what belongs to them does not warrant the sale of a fixed and specified portion that the vendor might designate arbitrarily, but of the share which may be allotted to him after the partition is made. Judgment of November 18, 1879.

Continuing his commentaries, on section 399, *supra,* of the Spanish Civil Code, Manresa, at page 467 of the same volume, says:

''And really the alienation of property held in common takes on a conditional form because its effects depend upon the future act of partition, and if the partition does not become effective, due to the disappearance of the thing held in common, or, even should the partition become effective, if the property the object of the community becomes greatly deteriorated, it would be unjust to deny to the purchaser the rights granted in general terms by section 1486 of the Civil Code'' (equivalent to section 1375 of our Civil Code, 1930 edition).

In the instant case, the plaintiff did not demand the sale at public auction of a specified portion of the property but of all the right, claim, interest, or share which, under any title, the defendant, José J. Benítez, might have in said portion. We feel that the plaintiff, in causing to be sold at public auction the share or interest that might belong to the judgment debtor, would be performing no act prejudicial to the rights of the other co-owners. Note that the sale of any specified portion of the property is not demanded, but the

sale of any right, interest, or share that Mr. Benítez might have in the undivided real property.

This same question has been thoroughly debated in American jurisprudence, in which the principle prevails that the tenants in common who have not intervened in the disposal of the property of a cotenant in particular, should be thoroughly protected in their rights. The purchaser takes subject to the limitation of not impairing the rights of the other part owners in the thing held in common. In some cases, particularly the older ones, the theory is maintained that the conveyance of a part of the property to another person may be ignored by the other cotenants when the partition is made.

In the case of *Duncan* v. *Sylvester,* 16 Me. 388, decided in 1839, it was said that the conveyance, made by a co-owner, of his interest in a part of the property might be annulled by the other co-owners when making the partition, for the reason that no part owner, by his own acts, may exclude another from a participation in the property.

In the case of *Stark* v. *Barrett,* 15 Cal. 362, decided in 1860, it was said that one tenant cannot appropriate to himself any particular parcel of the general tract; as, upon partition, the parcel may be allotted to a cotenant. The grantee takes subject to the contingency of the loss of the portion acquired, if, upon the partition of the general tract, said portion should not be allotted to the grantor.

In the case of *Smith* v. *Benson,* 9 Vt. 138, 31 Am. Dec. 614, decided in 1837, it was held that one tenant in common cannot convey a portion of his interest in the common estate by metes and bounds, without the consent of the other cotenant, and it was declared that if these conveyances were valid, the cotenant would be bound to make partition with each of the separate grantees, and an estate, which originally was valuable, with a right to compel partition with one only, might become wholly worthless, from the obligation to submit to perpetual subdivision.

Modern decisions recognize to the grantee certain equit-able rights, which must not be ignored, provided this can be done without prejudice to the other cotenants.

In the case of *Pellow* v. *Arctic Mining Co.*, 128 N.W. 918, decided by the Supreme Court of Michigan in 1910, the following was said:

"A cotenant may sell and convey the whole or any aliquot part of his undivided interest in the whole property, but he cannot, without the consent of the other, convey an undivided interest in any specific parcel of the common holding, nor can he, without such consent or subsequent ratification by his cotenant, convey by metes and bounds a specific parcel of the common estate and thus sever it so as to bind the nongranting cotenant. Freeman on Cotenancy, par. 199; Tiffany on Real Property, par. 170; *Porter* v. *Hill*, 9 Mass. 34, 6 Am. Dec. 22; *De Witt* v. *Harvey*, 4 Gray (Mass.) 486; *Adam* v. *Iron Co.*, 7 Cush. (Mass.) 361; *Staniford* v. *Fullerton*, 18 Me. 229; *Lessee of White* v. *Sayre*, 2 Ohio, 110. But where one cotenant assumes to convey in fee, by metes and bounds, a parcel of the common estate, as Harvey did in the case at bar, his deed is not void, but it creates equities in his grantee which will be protected and enforced so far as is possible without injury to the nongranting cotenant."

In the case of *Hitt* v. *Caney Fork Gulf Coal Co.*, 124 Tenn. 338, 139 S.W. 693, it was held that the rule that a deed by one tenant in common to a specific part of the common land by separate metes and bounds is void because the title of the other cotenants should not be so complicated without their consent, is subject to the qualification that if the land can be so laid off as to give the grantee his land as described in the deed, without injury to the others, that will be done. In the syllabus of the case of *Finlay* v. *Dubach*, 105 Kan. 664, 185 Pac. 886, approved by the court, it is said that where the owner of an undivided half interest in a tract of land of uniform value executes a deed conveying by metes and bounds the whole of a specific portion of the tract, the deed is not a nullity. Although it cannot vest full title in the grantee, it confers on him certain equitable rights which

authorize him, in the event of partition, to have the tract covered by the deed set apart to him, if this can be done without prejudice to the rights of the other cotenants.

In the case of *Seavey* v. *Green,* 1 Pac. (2nd) 601, decided by the Supreme Court of Oregon in 1931, the following was said:

"There is also a rule that a conveyance by a tenant in common which purports to describe by metes and bounds a portion of the common property which the grantor intends to convey will be held valid as between the parties to such a deed, as a conveyance of the grantor's interest, provided, of course, that the interests and rights of the other cotenants are not prejudiced by such a construction.... The limitation is always strictly observed, however, that such deed shall not be permitted to operate to the prejudice of the cotenants of the grantor....

"While there is some conflict of authority, the general rule founded on the weight of authority and sound reason, is: That a court of equity will give full effect to a deed conveying an undivided interest in a portion of a common tract, when it can be done without prejudice or injury to the nongranting cotenants."

The above doctrine, which is upheld by a great number of decisions, appeals to equity and justice and conforms to the principles of our civil law.

The appellee argues that properties which have not been previously attached cannot be sold to execute a judgment. Section 246 of our Code of Civil Procedure reads as follows:

"All goods, chattels, moneys, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law and all property and right of property, seized and held under attachment in the action, are liable to execution. Shares and interest in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in any real or personal property, and all other property not capable of manual delivery, may be attached on execution, in like manner as upon writs of attachments. Gold dust and nuggets must be returned by the officer as so much money collected, at its current value, without exposing the same for sale. Until a levy, property is not affected by the execution."

The preceding section is equivalent to section 668 of the Code of Civil Procedure of California. The Supreme Court of that State, in the case of *Godfrey* v. *Monroe,* 101 Cal. 224, 35 Pac. 761, declared that any interest, legal or equitable, which defendant has in lands is subject to attachment or execution.

The whole of the property described in the complaint was attached as belonging to the defendant, José J. Benítez, who argues that his share has not been levied upon and therefore cannot be executed.

In the case of *Davis* v. *Barnard,* 60 N.H. 550, 551, the Supreme Court of New Hampshire expressed itself thus:

"The defendant levied his execution upon the whole estate, one moiety of which belonged to the plaintiff and the other to the judgment debtor. According to all the authorities, the levy was good against John K. Davis; and although the return shows that the whole tract was levied upon, in fact his moiety and that alone passed to the creditor by virtue of the levy. The levy did not affect the plaintiff's title to the other half of the premises. She was not a party to the levy, and is not bound by anything that was done affecting her interest. She remains seized of an undivided half, and the defendant became seized of the other half as tenant in common with her. Upon petition by either for partition, there will be nothing in the levy to prevent judgment that partition be made. The defendant claims to hold only the moiety that belonged to John K. Davis, and makes no claim to the moiety belonging to the plaintiff. As the levy can have no effect upon the plaintiff's rights, when partition is made it must be made regardless of the levy. The plaintiff is entitled to a decree that the defendant release to her one undivided half of the whole tract."

We are of the opinion that the share or interest of José J. Benítez in the attached parcel may be sold to satisfy the judgment. In his complaint in the suit in intervention, the appellee states that said parcel was attached to secure the effectiveness of the judgment that might be rendered against José J. Benítez, and that the attachment was recorded in the registry of property. In his motion of July 13, 1932, seeking to vacate the order of execution, José J. Benítez himself

says that in the month of August, 1930, the parcel in question was attached as his property to secure the effectiveness of any judgment that might be rendered in the action against him; and he adds that the real property is recorded in the registry of property at folio 17, volume 62 of the Capital, third inscription. The first record of this real estate in the name of the community was made in October 23, 1930. It is true that the attachment was levied on the whole property, but as the part is included in the whole, we believe that the share of José J. Benítez in the said property was also attached and that the said share can be sold at public auction in executing the judgment rendered in favor of the plaintiff.

The judgment rendered by the lower court on August 9, 1932, must be reversed and the case remanded to said court for further proceedings in accordance with the terms of this opinion.